### City of Chicago v. Hawgood & Avery Transit Co.

1. DAMAGES—*Not Allowable for Demurrage Where No Evidence of Market Value or Earnings of Vessel is Introduced.*—In a suit for damages caused by injuries to a vessel there can be no recovery for demurrage in the absence of any evidence as to the market value of the vessel, or as to her net earnings.

Trespass on the Case, for damages to vessel. Appeal from the Circuit Court of Cook County; the Hon. CHARLES A. BISHOP, Judge presiding. Heard in the Branch Appellate Court at the October term, 1902. Opinion filed October 9, 1903. Remittitur filed and cause affirmed October 19, 1903.

CHARLES M. WALKER, corporation counsel, WILLIAM H. SEXTON, assistant corporation counsel, and C. E. KREMER, attorneys for appellant.

J. E. INGRAM, attorney for appellee.

MR. JUSTICE STEIN delivered the opinion of the court.

This is an action brought by appellee, the owner of the steamer Frank D. Ewen, against the City of Chicago, to recover damages sustained by the steamer while lying in the south branch of the Chicago river at Baker's dock, near the Twelfth street bridge. It appears that on June 29, 1896, while the vessel was lying at the dock, the bridge was swung against her rigging. For the damages

to the vessel by reason of this collision, and for the loss of her use while being repaired, appellant brought this action.

A plea of the general issue was filed to the declaration. The case was tried April 17, 1902, before the Honorable Charles A. Bishop, without a jury, and the court found for the plaintiff and assessed the damages at $1,096.68.

Before and at the time of the accident the vessel was in the west draw of the bridge; her stern was toward the bridge and about ten or twelve feet from it when closed. The boom projected about five feet beyond the stern. The length of the vessel approximated 200 feet. While it was lying at dock, and before the accident, the bridge was swung a number of times to let vessels pass through the east draw. Upon these occasions the bridge was swung with the west end to the south and stopped in the center, leaving the east draw open. It was swung back from north to east and never during that time made a complete revolution.

The accident occurred in daylight and was caused by the bridge-tender swinging the north end of the open bridge to the westward, toward and into the steamer, thus inflicting the damages sued for. Immediately after the accident the bridge-tender said: "I thought the bridge would clear you."

Appellant introduced no evidence other than the ordinance hereinafter set forth.

Appellant does not, and upon the proof can not seriously deny that its bridge-tender was negligent in running the bridge into the steamer. But it claims exemption from liability on two grounds: first, that appellee was guilty of contributory negligence, and second, that it was a trespasser, and there is no proof that appellant's negligence was willful. Both of these claims are based upon two sections of an ordinance of the city, received in evidence over objection and exception, and reading as follows:

783. "Vessel Blocking Passage—Injury to Bridge.—No vessel, craft or float shall be moored or anchored within the harbor, or in any slip, or at any dock, as to prevent the

passage of any other vessel, craft or float, nor shall any vessel, craft or float be moored as to range against or injure any bridge across the river, or any branch thereof, under a penalty of not less than $10, nor exceeding $100, to be recovered from the master, owner, or person in charge thereof, for each offense."

784. "All vessels, crafts or floats navigating the harbor, when passing any bridge, shall be moved past the same as expeditiously as is consistent with a proper movement in the harbor, but in no case shall any vessel, craft or float, while passing any bridge, and obstructing the passage across such bridge, move at a rate of speed less than two miles per hour; and no vessel, craft or float shall be so anchored or fastened as to prevent any bridge from a free and speedy opening, or any ferry boat from a free and direct passage, nor shall any line or fastening be so thrown, laid or made fast as to cross the track of any bridge or ferry, under a penalty of not more than $25 for each offense, to be recovered from the master or other person having charge of said vessel, craft or float."

The accident happened on June 29, 1896, and there is no proof that the ordinance was in force before 1897. But even if this objection did not exist, it can not be said that the position of the vessel constituted a violation of the ordinance. It is not shown to have "prevented the passage of any other vessel, craft or float," (the proof is that vessels passed freely through the east draw,) or to have "prevented the bridge from a free and speedy opening."

The trial court did not err in holding that appellee did not place its vessel in a dangerous position. There would have been no danger and the collision would not have happened if the bridge-tender had exercised the care the law required of him.

The damages allowed consist of the expense of repairs, demurrage and interest. Appellant insists that nothing should have been allowed for demurrage. Upon this subject the court held the following propositions, to wit:

"5. That the court, in considering the question of damage, should, in determining the amount, if any, recoverable for demurrage, base its findings upon the market value of the vessel during the period the same was necessarily delayed by reason of the damages and repairs made neces-

sary by the same, and not the price or amount for which said vessel had in fact been rented or chartered during the period.

" 6.    That if it appears from the evidence that there was no market value for said vessel, and no fixed value per day or per week for the use of said vessel, then the court must arrive at the value per day of said vessel by deducting from the gross earnings of the vessel per trip, the expenses of such trip, and ascertain the value per day of the vessel by dividing the sum remaining by the number of days required by the vessel to make the trip.

" 7.    That if no competent evidence is introduced to show the market value of the vessel, or her net earnings, then the plaintiff can not recover for any detention, because of failure to introduce sufficient evidence upon which to base any finding."

Counsel for appellee does not question the correctness of the law so declared, and it accordingly became necessary to show the market value of the use of the vessel during its detention, if there was such value, and if not, then in the absence of a " fixed value per day or per week " the court would compute the damage per day " by deducting from the gross earnings of the vessel per trip the expenses of such trip," etc.

A careful examination of the evidence discloses that it does not warrant a recovery for demurrage.   No market value was shown, nor was it shown that there was none.

Appellee is willing to remit $35 awarded it in connection with the making of a certain stick.   If in addition appellee within ten days remit $644.84, the allowance for demurrage and interest thereon, the judgment will be affirmed; otherwise it will be reversed and the case remanded.